## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| PATRICK NICHTING, | : | Consolidated Case No. 3:11-cv-141 |
| Individually and on Behalf of All | : | |
| Others Similarly Situated, | : | |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| v. | : | |
| | : | |
| DPL INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
## MOTION TO EXPEDITE DISCOVERY (Doc. 41)

This civil action is before the Court on Plaintiff's motion to expedite discovery

(Doc. 41) and the parties' responsive memoranda (Docs. 43, 45, 46).

### I.   BACKGROUND

This case relates to an offer by The AES Corporation ("AES") to acquire all of the

outstanding shares of Dayton Power and Light (DPL Inc.) in a cash transaction valued at

approximately $4.7 billion (the "Proposed Transaction"). (Doc. 40 at ¶¶ 1, 2). Under the

terms of the definitive Agreement and Plan of Merger dated April 19, 2011 (the "Merger

Agreement") and announced the same day, holders of DPL common stock will receive

$30.00 in cash per share they own. The DPL Board and management support the offer,

and on June 22, 2011, the Company filed the Preliminary Proxy with the SEC,

recommending that DPL shareholders vote in favor of the Proposed Transaction. Plaintiff

alleges that both the value to DPL shareholders and the process by which Defendants

propose to consummate the transaction are fundamentally unfair. (*Id.* at ¶¶ 68-84).

Plaintiff filed a motion to expedite discovery to facilitate a prompt evidentiary hearing on the amended and consolidated complaint and motion for preliminary injunction.[1]  (Doc. 41).  Plaintiff requests key documents and depositions of members of DPL's Board, management, and financial advisor.  (Doc. 45 at 8).  Plaintiff claims that without the omitted information, DPL shareholders will have been denied their fundamental right to make an informed decision as to the Proposed Transaction and Merger Agreement. (Doc. 40 at ¶¶ 88-89).  Defendants argue that because Plaintiff's disclosure claims are meritless, and because Plaintiff's price claim can be decided independently of the merger under Ohio's appraisal statute, there is no prejudice to Plaintiff in litigating this present case pursuant to a regular schedule.  Additionally, Defendants have moved to dismiss the Amended Complaint.  (Docs. 44, 48).

## II.    ANALYSIS

### A.    Whether the PSLRA Applies

Defendants maintain that the Private Securities Litigation Reform Act of 1995 ("PSLRA")[2] governs this action because Plaintiff has asserted claims under Section 14(a) and 20(a) of the Exchange Act.  The automatic stay of discovery provisions of the PSLRA require a stay of discovery in claims arising under that statute until after the motions to dismiss have been decided.  *Ross v. Abercrombie & Fitch Co.*, No. 2:05cv819,

---

[1]    Plaintiff seeks to enjoin Defendants from proceeding to solicit proxies.  (Doc. 41).

[2]    "The PSLRA was passed to redress certain perceived abuses in securities litigation, including the abuse of the discovery process to coerce settlement."  *In re Advanta Corp. Secs. Litig.*, 180 F.3d 525, 530-31 (3d Cir. 1999).

2006 U.S. Dist. LEXIS 72956 (S.D. Ohio Oct. 5, 2006).[3]

Plaintiff argues, however, that the PSLRA's stay of discovery does not apply in this case because he brings the Exchange Act Claims as an individual and not as a class. (Doc. 40 at ¶¶ 111, 117). "As this is not a class action, there is little, if any, coercive aspect to plaintiff's discovery demands." *Tobias Holdings v. Bank United,* 177 F.Supp.2d 162, 166 (S.D.N.Y. 2001).[4] However, there is a significant body of law that supports a finding that the automatic stay provision applies even when federal securities claims are brought individually. *Lindner v. Am. Exp. Co.*, No. 10 Civ. 2228, 2010 U.S. Dist. LEXIS 119692, at *4 (S.D.N.Y. Nov. 8, 2010) ("The automatic stay provision applies in actions

---

[3]  "In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). *See, e.g., In re Countrywide Fin. Corp. Derivative Litig.*, 542 F.Supp.2d 1160, 1179 (C.D. Cal. 2008) ("[T]he plain language of the stay provision clearly encompasses any action that asserts claims under the 1934 Securities Exchange Act."); *Vacold LLC v. Cerami*, No. 4024, 2001 U.S. Dist. LEXIS 1589, at *22 (S.D.N.Y. Feb. 16, 2001) ("To prevent the unnecessary imposition of discovery costs on defendants, the PSLRA includes provisions for a mandatory stay of discovery. Under these provisions, unless exceptional circumstances are present, discovery in securities actions is permitted only after the court has sustained the legal sufficiency of the complaint.").

[4]  Although the discovery stay provisons are not limited to federal securities class actions, the PSLRA's legislative history indicates that class actions were the main focus of the PSLRA. *See* Conference Report at 32 ("Section 101 contains provisions to reform abusive securities class action litigation."); Senate Report No. 104-98, 104th Cong. 1st Sess. at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693 ("The Securities Subcommittee heard testimony that discovery in securities class actions resembles a fishing expedition. . . Accordingly, the Committee has determined that discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint.").

involving individual plaintiffs.").[5]

Additionally, Plaintiff alleges that the PSLRA stay does not apply to this case because it does not apply to common law claims.[6] *Tobias Holdings*, 177 F.Supp.2d at 165. The question presented in *Tobias* was whether the PSLRA stayed discovery with respect to non-fraud state law claims, where jurisdiction over such claims was based on diversity of citizenship. The court found that it did not. "The automatic stay mandated by the PSLRA cannot prohibit discovery on non-fraud common law claims arising under the Court's diversity jurisdiction. To hold otherwise would give the PSLRA too broad a brush, sweeping into its purview all related but distinct state law claims brought under diversity jurisdiction." *Id.* at 169. Specifically, the court determined that none of the perceived abuses addressed by Congress in enacting the PSLRA were present – plaintiff was not attempting to use discovery as a "fishing expedition" to find a sustainable claim not alleged in its complaint, and the action was not a frivolous lawsuit designed to extort money from defendants who would rather settle than pay exorbitant discovery costs. *Id.*

---

[5]   *See also In re Marvell Tech. Grp. Ltd. Derivative Litig.*, No. C-06-03894, 2007 U.S. Dist. LEXIS 41268, at *2 (N.D. Cal. May 29, 2007) (rejecting argument that PSLRA automatic stay applied solely to class actions); *Benbow v. Aspen Tech., Inc.*, No. 02-2881, 2003 U.S. Dist. LEXIS 6568, at *3 (E.D. La. Apr. 11, 2003) (denying motion to compel discovery, holding that PSLRA's automatic stay applies to claims brought individually); *Sarantakis v. Gruttadauria*, No. 02C1609, 2002 U.S. Dist. LEXIS 14349, at *4 (N.D. Ill. Aug. 5, 2002) ("[L]ifting the mandatory stay as to the closely related state claims would be equivalent to lifting the stay for the federal claims and 'would be an improper end run around the PSLRA.'").

[6]   Plaintiff's counsel stated in oral argument that he might drop the PSLRA claims if they prevented him from obtaining discovery, as this case was originally filed as a diversity action. (*See* Doc. 1).

at 166. Moreover, the court found that "plaintiff's state law claims . . . represent legally cognizable, substantive causes of action." *Id.* at 168.

However, many courts have held the converse – that the PSLRA stay does apply to state law claims. *In re Countrywide*, 542 F.Supp.2d at 1179-1180; *see also In re Cardinal Health, Inc. Sec. Litig.*, 365 F.Supp.2d 866, 872 (S.D. Ohio 2005) (staying discovery in state court actions until the court had decided motion to dismiss claims filed in federal court). No federal circuit court has addressed this issue.

As an initial matter, this Court finds that the PSLRA stay does not automatically apply to all state common law claims for the reasons articulated in *Tobias*, and it does not intend to "penalize [Plaintiff] for bringing both its federal securities claims and related state common law claims in one federal action." *Tobias*, 177 F.Supp.2d at 168. However, in its reasoning, the *Tobias* court emphasized that given the specific facts of the case before it, permitting discovery on the state law claims would not "frustrate the will of Congress." *Id.* at 167. This Court has already articulated its initial reaction to Plaintiff's state law claims. That is not to say that this Court will not ultimately be persuaded otherwise, but given the existing legal and factual landscape of this action, and in keeping with the spirit and purpose of the PSLRA,[7] the stay applies here to all claims.

---

[7]   "[T]he stay of discovery procedures adopted in conjunction with the heightened pleading standards under the PSLRA is a reflection of the objective of Congress to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis." *Miller v. Champion Enter., Inc.*, 346 F.3d 660, 691-92 (6th Cir. 2003).

## B.    Whether the PLSRA's Discovery Stay Should Be Lifted

The PSLRA prohibits discovery unless Plaintiff makes a showing "that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. §78u-4(b)(3)(B).

### 1.    *Particularized Discovery*

A discovery request is "particularized" within the meaning of 15 U.S.C. § 78u-4(b)(3)(B) if the "party seeking discovery under the exception . . . adequately specif[ies] the target of the requested discovery." *In Re Lernout & Hauspie Sec. Litig.*, 214 F.Supp. 2d 100,108 (D. Mass. 2002).[8]  Whether a discovery request is sufficiently "particularized" depends on "the nature of the underlying litigation." *In re Royal Ahold*, 220 F.R.D. 246, 250 (D. Md. 2004).[9]

Here, Plaintiff requests the following discovery:

1.     Production of minutes from any meetings attended by any member of DPL's Board of Directors at which the Proposed Transaction or any other potential strategic transactions were discussed, including any discussions regarding voting on the Proposed Transaction;

and

---

[8]     *In re Countrywide Litig.*, 542 F.Supp.2d at 1181 (denying motion for expedited discovery where plaintiffs' requests were broad and vague, but permitting plaintiffs to re-file motion "that is narrow enough to meet the requirements of the exception").

[9]     *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 234 F.Supp.2d 301, 306 (S.D.N.Y. 2002) (finding the particularity requirement met where plaintiffs sought "a clearly defined universe of documents, specifically documents that *WorldCom* has already produced in connection with other identified proceedings.").

2.      Production of all communications or documents subject to search terms related to Proposed Transaction code names concerning the financial advisors retained in connection with the Proposed Transaction. This request includes, but is not limited to, retainer agreements, fairness opinions, bankers' books and any drafts thereof, presentation documents, and documents or information sufficient to identify the assumptions and calculations that formed the bases for the financial advisors' analyses;

3.      Production of all communications subject to search terms related to Proposed Transaction code names between DPL, AES and their financial advisors related to the Proposed Transaction;

4.      Production of all presentation documents prepared by DPL's management or any bankers or financial advisors referenced in Paragraph 2, concerning the Proposed Transaction or any other potential strategic transaction, merger, or acquisition;

5.      Deposition of the person most knowledgeable with respect to the Proposed Transaction and any other potential strategic transactions considered by the Board during the past 12 months;

6.      Deposition of the person most knowledgeable regarding the financial projections of DPL's; and

7.      Deposition of the person most knowledgeable from UBS concerning the Proposed Transaction.

While the Court finds the depositions to be sufficiently particularized, at least as amended by the Court hereinafter, the Court is concerned by the breath of Plaintiff's document requests, and especially because they will be guided "by using search terms." (Doc. 45 at 5). The use of "search terms" indicates that Plaintiff requests, *inter alia*, extensive electronic discovery, which, by its very nature, would likely be exceedingly burdensome.

### 2. *Undue Prejudice*

The second step of the inquiry is whether Plaintiff has proven undue prejudice.

*Ross*, 2006 U.S. Dist. LEXIS 72952 at 4-5. "District courts have construed undue

prejudice to mean improper or unfair treatment amounting to something less than

irreparable harm." *In Re Bank of America Corp. Sec. Litig.*, No. 09MDL2058, 2009 U.S.

Dist. LEXIS 108322, at *6 (S.D.N.Y. Nov. 16, 2009). It is Plaintiff's burden to make a

showing of undue prejudice. *In re Fannie Mae Secs. Litig.*, 362 F.Supp.2d 37, 38

(D.D.C. 2005).

Defendants claim that the availability of a post-closing remedy – either in the form

of appraisal rights or a cause of action under Section 14(a) – negates any prejudice that

would result from a stay with respect to the monetary issues.[10]  With respect to the

disclosure issues, Defendants claim that because the motions to dismiss are on an

expedited briefing schedule, there is sufficient time to resolve the motions, and if still

applicable, undertake discovery before the shareholder vote. (Doc. 40 at ¶ 67; Prelim.

---

[10]  Ohio Rev. Code § 1701.85 provides a remedy for Plaintiff's claims as an appraisal action for payment of the fair cash value of his shares. When there is no risk that plaintiff will be left without a remedy, the case is a "garden variety" securities action and the automatic stay of discovery is enforced. *Frank v. Dana Corp.*, No. 3:05cv7393, 2007 U.S. Dist. LEXIS 45554, at *12-13 (N.D. Ohio June 18, 2007). *See also Ross*, 2006 U.S. Dist. LEXIS 72956 at 7-8 (no relief from stay where "[t]his does not appear to be a quickly-moving landscape or one which involves imminent resolutions of claims or the filing of other proceedings, such as bankruptcy, which will have a significant impact upon the plaintiffs' ability either to pursue their rights through litigation or to obtain a recovery").

Proxy at 1).[11]  Additionally, Defendants argue that Ohio courts have found that

"speculations" and "forecasts of potential future value" – so-called "soft information" –

are not material. *Isroff v. Westhall Co.*, No. 15063, 1991 Ohio App. LEXIS 5856, at *4

(9th App. Ohio 1991).[12]  Finally, Defendants argue that Plaintiff has no real need for

expedited discovery because there is no threat of irreparable harm. *Leone*, 2010 U.S.

Dist. LEXIS 121553 at 4-5.[13]

---

[11]    Federal courts have held that the mere delay resulting from an automatic stay of discovery does not constitute undue prejudice. *In re Heckmann Corp. Sec. Litig.*, No. 10-378-LPS, 2010 U.S. Dist. LEXIS 141663, at *4 (D. Del. Feb. 28, 2010) ("The inherent delay in the PSLRA's discovery stay that compels the plaintiff to wait until its complaint has been legally tested before it can conduct discovery is not unduly prejudicial."); *Ross*, 2006 U.S. Dist. LEXIS 72956 at 2 ("Certainly, any party who is deprived of discovery which would enable that party to formulate either a litigation or a settlement strategy can be said to be disadvantaged in pursuing those strategies if the Court denied discovery to that party. Thus, there is a real possibility that in every securities case, the stay provided for in § 78u-4(b)(3)(B) will work some prejudice on the plaintiffs.  Congress was undoubtedly aware of that fact. Consequently, the modifier 'undue' was inserted before the word 'prejudice' in order to stress that lifting a stay of discovery must be premised upon some showing of prejudice which is above and beyond the prejudice which a party suffers simply from being denied access to discovery materials early in a case.").

[12]    *See also Binsack v. Hipp*, C.A. No. H-97-029, 1998 Ohio App. LEXIS 2370, at *4 (Ohio 6th Dist. App. June 5, 1998) (there is "no duty to disclose soft information, such as speculations and forecasts of potential future value").

[13]    *Leone* is distinguishable from the instant case in several respects. First, despite requesting expedited discovery, the plaintiff in *Leone* had not filed a motion for a preliminary injunction, and given that delay, the court found that the additional discovery sought amounted to nothing more than a fishing expedition. *Id.* at 11. Second, the action was one of seven which were filed seeking to enjoin the proposed merger – the other six actions were filed in state courts. The state court actions were significantly more advanced, and the parties had entered into an agreement for limited discovery and had begun producing documents.  The court found that plaintiff had not made an effort to show how the discovery being produced in the state court action was not sufficiently protecting the interests of shareholders, making the federal action duplicative and an unnecessary waste of judicial rescources. *Id.* at 12. Moreover, the plaintiff was unable to identify any information he hoped to gain through the expedited discovery process. *Id.*

Plaintiff claims that he requires an open and full record prior to the shareholder vote, because he will be irreparably harmed if forced to make a decision on the merger based on incomplete information.[14]  Specifically, Plaintiff alleges that the June 22, 2011 proxy[15] fails to disclose DPL's unlevered free cash flows, or even the key inputs necessary to reach free cash flows, which are critical to understanding the basis for those projections. [16]  (*See* Preliminary Proxy at 34).  *Woodward & Lothrop, Inc. v. Schnabel*, 593 F. Supp. 1385, 1386 (D.D.C. 1984) (court granted temporary restraining order where "the challenged proxy materials did not timely equip shareholders with the total mix of information mandated for an intelligent vote on the [merger] proposal").[17]

The Court has been given conflicting predictions as to the date of the shareholder vote, ranging from September 2011 to late October 2011.  The motion to dismiss will be ripe for decision on August 1, 2011.  Therefore, the worst case scenario provides only 31 days for this Court to review voluminous pleadings and prepare an order resolving the motions to dismiss, and thereafter, if necessary, for Defendants to gather discovery, for

---

[14]     Shareholders are entitled to cash value information.  *Turner v. Bernstein*, 776 A.2d 530 (Del Ch. 2000).  It has been recognized that Delaware courts have become specialists in the field of corporate law, and decisions of the Delaware courts are often "instructive" on corporate matters.  *McCarthy v. Middle Tenn. Elec. Mbrshp. Corp.*, 466 F.3d 399, 409 (6th Cir. 2006).

[15]     As Defendants pointed out in oral argument, the June 22 proxy is only a *preliminary* proxy, and that Defendants could potentially disclose additional information in the final proxy statement.

[16]     The Court notes that upon initial review, it smacks of materiality that a voter be made aware of the Company's cash flow projections in order to make an informed decision.

[17]     *See also ODS Technologies, L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003) ("The threat of an uninformed shareholder vote constitutes irreparable harm"); *In re Pure Resources, Inc. S'holders Litig.*, 808 A.2d 421, 452 (Del. Ch. 2002) ("[I]rreparable injury is threatened when a stockholder might make a tender or voting decision on the basis of materially misleading or inadequate information.").

Plaintiff to review that discovery, and, if applicable, for this Court to hold a preliminary injunction hearing and prepare an order ruling upon the motion for preliminary injunction. This time constraint, coupled by a showing of potential irreparable harm,[18] militates in favor of an order for limited and discreet discovery regarding DPL's financial projections – a disclosure issue that troubles the Court.

### III.    CONCLUSION

Accordingly, for the reasons stated above, Plaintiff's motion for expedited discovery (Doc. 41) is **GRANTED IN PART AND DENIED IN PART**. Defendants shall produce the following forthwith:

1.    Relating to the time period relevant to the Proposed Transaction, DPL's financial projections, including DPL's unlevered free cash flows, and the key inputs necessary to reach free cash flows, and "financial forecasts and estimates relating to DPL prepared by DPL management" and provided to "UBS [which] performed a discounted cash flow analysis of DPL." (See Preliminary Proxy at p. 31); and

2.    The person from DPL most knowledgeable about how DPL's financial projections relate to the Proposed Transaction for a deposition lasting not more than four hours; and

3.    The person from UBS most knowledgeable about how DPL's financial projections relate to the Proposed Transaction for a deposition lasting not more than four hours.

**IT IS SO ORDERED.**

Date: _7/15/11_____

_Timothy S. Black_
Timothy S. Black
United States District Judge

---

[18]    *See* footnotes 17 and 14, *supra*.